UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| STACY CARTER | CIVIL ACTION NO.: 05-0765; SEC. P |
| VERSUS | JUDGE DRELL |
| TIM WILKINSON, ET AL | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment (Doc. #22) filed by pro se plaintiff Stacy Carter ("Carter") and a Motion for Summary Judgment (Doc. #26) filed by defendants, the warden of the Winn Correctional Center ("WCC") Tim Wilkinson ("Wilkinson"), and the Corrections Corporation of America ("CCA"). Carter's pro se civil rights complaint was filed pursuant to 42 U.S.C. § 1983. Carter filed suit against Wilkinson, CCA, and the Louisiana Department of Corrections ("D.O.C."). The D.O.C. was dismissed from the lawsuit, with prejudice, based on immunity under the Eleventh Amendment to the United States Constitution.

## FACTS

Carter, who is disabled and uses a wheelchair for mobility[1], has alleged that on April 29, 2004, he fell when attempting to

---

[1] Apparently, Carter had surgery on his hips in March 2002 from gunshot wounds. He has bullet fragments in his right hip. (Doc. #22-9, p.10.) A WCC form dated 9/17/03 indicates that Carter uses an abduction pillow when sleeping, that he can ambulate with a walker in his dorm but has to use a wheelchair for long distances, and that he can sit to work. (Doc. #22-9, p.9.)

cross a threshold of the dining area at WCC. (Doc. #1, p.4-5.) Carter claims that the front wheels of his wheelchair became stuck on the "bump" of the threshold, and he was thrown forward from his wheelchair onto the ground. (Doc. #1, p.3-4.) Carter was treated after the accident, and the doctor noted positive back pain with radiation down bilateral lower extremities, hip pain, and swelling. (Doc. #22-9, p.14.) His right leg appeared approximately one inch shorter than the left. He was diagnosed with muscle strain and contusions on the hip and back, and he was prescribed Naproxen 500 mg and Flexeril 10 mg for pain and spasms. (Doc. #22-9, p. 13.) An x-ray of the hips showed a prior left total hip replacement and degenerative changes and loss of joint space within the right hip. (Doc. #22-9, p.8.)

On May 7, 2004, the prison doctor prescribed Motrin for three months. On May 10, 2004, Carter submitted a sick call request because he was not receiving his medication and because his back was "going out" on him. He was instructed by the medical staff to alternate hot and cold packs to his back. (Doc. #22-8, p.20-21.) Additional medical treatment was provided to Carter in June 2004.

After the incident, Carter submitted a complaint regarding the facility's accessibility for handicapped individuals. The First Step Response indicated that the prison's accommodations had been inspected by the Louisiana Attorney General's office, and "In addition, the Advocacy Center of New Orleans have [sic] surveyed the facilities provided to people with disabilities and received

approval." (Doc. #31, p.5.) The response indicated that bi-annual inspections are conducted by the Louisiana Department of Health and Hospitals as well as the Louisiana State Fire Marshall. The form indicates that the doorway to the dining hall has 36" doors with thresholds measuring 3/8", with an incline that does not drop more than 1" per foot, thus meeting the ADA guidelines. (Doc. #31, p.5.) The second step response form also denied Carter's complaint. (Doc. #22-6, p.9.) The instant lawsuit was then filed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 255 (1986); Price v. Federal Exp. Corp., 283 F.3d 715, 719 (5th Cir. 2002). Summary judgment is granted when a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992), cert.den., 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46. If the moving party carries its burden under Rule 56(c), the burden shifts and the opposing party must direct the

court's attention to specific evidence in the record that demonstrates that it can satisfy a reasonable jury that it is entitled to a verdict in its favor. See Anderson, 477 U.S. at 252. A mere scintilla of evidence will not satisfy the opposing party's burden. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

## LAW AND ARGUMENT

Defendants claim that they are entitled to summary judgment because the doorway in question meets the ADA standards, and there is no evidence that Defendants had the requisite knowledge to support a finding of an Eighth Amendment violation. In order to succeed on an Eighth Amendment claim, the plaintiff must establish that the deprivation alleged was sufficiently serious and that the prison official acted with deliberate indifference to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 843 (1994). Conditions of confinement that rise to the level of an Eighth Amendment violation are those that are "cruel and unusual" under contemporary standards. See Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Id. However, when the restrictions of confinement rise to a level that they result in pain with no penological purpose, they constitute cruel and unusual punishment under the Eighth Amendment. Id. It is the "obduracy and wantonness, not inadvertence or error in good

faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id., citing Whitley v. Albers, 475 U.S. 312, 319 (1986).

In order to establish deliberate indifference, the petitioner must show that the officials knew of and disregarded an excessive risk to the victim's health or safety. See McClendon v. City of Columbia, 305 F.3d 314 (5th Cir. 2002). Plaintiff argues that the thresholds of the facility's doorways do not meet the federal guidelines, and that Defendants were very well aware of the risk caused by the noncompliant thresholds.[2] Plaintiff presented the sworn declaration of Nell Hahn, an attorney with the Advocacy Center, who stated that according to the Uniform Federal Accessability Standards ("UFAS"), accessible routes should have no changes in level greater than 1/4" unless they are beveled, so that the slope is no more than 1:2. If the change in level is more than 1/2", there must be a ramp. (Doc. 31, p.8.) Ms. Hahn also stated that she visited WCC in 2002 after receiving complaints from inmates with disabilities about the thresholds, among other things. The thresholds in the program building were over 1/4" high, and

---

[2]Defendants do not admit that the thresholds fail to meet the guidelines. However, Defendants argue that, even if they did not meet the guidelines, they were unaware of any risk to the plaintiff.

were not beveled. It was Hahn's understanding from the Warden that the thresholds in the dining hall and education building were the same. Hahn sent the Warden a letter in December 2002 advising him that the thresholds did not comply with applicable accessibility regulations. (Doc. #31, p.8-9.) Hahn stated that she was not aware of whether any changes had been made to the noncompliant thresholds after she sent the letter. (Doc. #31, p.9.)

To counter Plaintiff's argument and the declaration of Ms. Hahn, Defendants submitted the affidavit of the WCC Maintenance Supervisor, Eddie Johnson, who stated that the threshold measured 3/8" high (Doc. #26-4, p.2), which is just short of requiring a ramp. However, in the administrative responses for another handicapped inmate who complained that the dining hall thresholds were difficult to cross over in a wheelchair[3] (Doc. #22-7, p.9-10), the prison stated that the thresholds actually have a 1/2" rise. The measurement provided to the other inmate is different from the one reported by the maintenance supervisor in his affidavit.

Aside from that inconsistency, the defendants stated in Plaintiff's First Step Response, "the Advocacy Center of New Orleans have [sic] surveyed the facilities provided to people with disabilities and received approval." (Doc. #22-7, p.3.) When Plaintiff requested production of documents reflecting that

---

[3]Tyson apparently made a complaint specifically involving the B-side of the dining hall, and it appears that Plaintiff's initial complaint was regarding the A-side of the dining hall. However, according to the prison, the A and B sides are identical. (Doc. #22-7, p.9.)

approval, Defendants responded "Not applicable." (Doc. #31, p.19.) Additionally, the prison stated in Plaintiff's First Step Response that the Louisiana Attorney General's Office had inspected the prison, that bi-annual inspections are conducted by the Louisiana Department of Health and Hospitals ("DHH") as well as the Fire Marshall, and that the Dept. of Public Safety ("DPS") made quarterly audits. (Doc. #22-7, p.3.) When Plaintiff requested documents evidencing each of those inspections/audits, and Defendants again replied, "Not applicable." The only authority presented by the defendants that the threshold *does* meet the required measurements is the affidavit of the Maintenance Supervisor.

Plaintiff has presented evidence through the declaration of Ms. Hahn indicating that the thresholds did not meet requirements in 2002. Defendants have not established that any changes were made to the thresholds since Hahn's report. However, they have presented some evidence (the affidavit of the maintenance supervisor) that the facility is in compliance with the regulations. Therefore, it is evident that there is a genuine issue of fact regarding what the accurate measurements are, and whether the thresholds meet the government regulations. Such fact is material to Plaintiff's claim.

Defendants have argued that, even if the thresholds are not in compliance, Plaintiff cannot prove that Defendants knew of such facts or could have inferred that a risk existed. (Doc. #26-2,

p.4.) Defendants state that "it is impossible to disregard a risk of which there is no awareness on the part of the defendants." To argue that they were not aware of a risk is disingenuous. If the Advocacy Center, Attorney General, DHH, Fire Marshals, and DPS all inspected the premises to ensure that the facility complied with the ADA, then surely Defendants were aware that there was a risk associated with noncompliance. Defendants also claimed that the incident involving Plaintiff was the "first such incident involving the subject threshold." (Doc. #26-2, p.5.) The undersigned notes that, not only did Ms. Hahn state that multiple complaints were made in 2002 regarding the WCC thresholds, but in Defendants own answers to interrogatories, they stated:

> "Respondent acknowledges that there have been other alleged accidents at the facility *and not just at the threshold in question.*" (Doc. #31, p.13.)

Therefore, is seems that other incidents have happened "at the threshold in question." Additionally, at least one other complaint was made by another handicapped inmate,[4] and two other inmates have submitted affidavits stating that they have trouble crossing various WCC thresholds in their wheelchairs. Thus, other evidence, including Defendants own discovery responses, are in conflict with the Warden's affidavit.

---

[4] While the prison records for Plaintiff and the other inmate are not certified, Defendants have not presented any argument that they are not genuine. (See Ruling on Motion to Strike, Doc. #24.)

Plaintiff has presented evidence that the defendants acted with deliberate indifference; that is, they knew of and disregarded an excessive risk to the victim's health or safety. First, however, it must be established that the thresholds are unsafe and do not comply with the ADA. Therefore, there is a genuine issue of material fact, and neither Plaintiff nor Defendants are entitled to judgment as a matter of law.

For the foregoing reasons, it is recommended that the Motion for Summary Judgment (Doc. #22) filed by the Plaintiff be DENIED and that the Motion for Summary Judgment (Doc. #26) be DENIED.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND**

**LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 14th day of July, 2006.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE